20-1260, P.K. Management Group v. HUD. Mr. Solosky, ready to hear from you. Thank you, Your Honor. Good morning, and may it please the Court, I'm here today representing P.K. Management Group, Inc. P.K. Management Group is a FSM contractor, and FSM stands for Field Service Management. P.K.M.G., which is how I'll refer to P.K. Management Group today, is one of many FSM contractors doing work for HUD under the FSM 3.8 and 3.10 programs. So I just wanted to kind of set the table for the Court that this is one of many contracts that's being affected by the issue presented to the Court today. And, Your Honor, the issue that we are here to discuss is how HUD pays for a particular type of service called routine inspections. I think I understand that, Mr. Solosky. Let me start by asking you if you agree that custodial properties are not HUD-owned. They are not HUD-owned vacant, Your Honor. I know that there's an issue raised in the government's brief about the term HUD properties, but I don't believe that those two things mean the same thing. I would agree they're not HUD-owned vacant properties, but they are a type of HUD property that has to be serviced under the FSM contract. Well, how do you get around the fact that the CLIN, the 005AA, specifically refers to HUD-owned vacant? And shouldn't we take that to mean that it applies only to HUD-owned vacant and not to custodial properties? Well, I don't, Your Honor, I don't believe so. And there's a couple of reasons why. The first being that that exact question, or a very similar question, was asked during the Q&A. One of the offerors asked HUD, what is CLIN 005AA? And the answer was routine inspections. And that answer, Your Honor, aligns very closely with Section B of the contract in which HUD told the offerors what routine inspections were and where they fell, looking specifically at page 125 of the appendix. And it says that routine inspections, it doesn't say for HUD-owned vacant, it says routine inspections are paid under CLIN 005AA. And that is different than the ongoing... Well, no one disputes that the 005AA refers to routine inspections. The question is whether it refers to routine inspections for all property types. And this Q&A didn't bear on what that seems to be the critical issue, and I'm not clear on how this Q&A bore on that. Well, Your Honor, I believe that if HUD, in that answer, had said routine inspections for HUD-owned vacant properties, that would have been the answer that you are implying, but it didn't. It said routine inspections broadly for, and I think that you can read into that, for all properties. The other issue, Your Honor...  Yes, Your Honor. Why isn't this case, why isn't this case solved by the simple law of numbers and letters? 05AA is obviously a subset of five, and therefore it applies to five, but not to six. Isn't it that simple? It's not, Your Honor, because then you start to run into interpretation problems where you say, okay, well, then what does six pay for? And you look at six, and it has a monthly payment in the chart you're looking at, but routine inspections are paid for biweekly. And then you start to get into the issues that the... Wait a minute. I'm sorry. To be clear, six, it says they're monthly, right? Under six, I'm looking at the chart? Yes. But routine inspections are paid biweekly, are performed biweekly, and the PWS says that you get credit for performing each routine inspection, indicating it's not a monthly payment. It's paid based on each, performing each routine inspection. There's nothing in the contract that says anywhere that routine inspections are bundled in to Clin 6. As a matter of fact, Clin 6 clearly, and again, back to page 125 of the appendix, says that that is for routine ongoing property management fees. The contract tells you what's in Clin 6, and it doesn't say it includes routine inspections. Where it tells you routine inspections are is Clin 5AX. And then, Your Honor, you run into the same problem, then, that the board did, where the But again, what the board did was, it took the word inspection and read in the plural form of routine inspections, which the government has acknowledged is not correct in its brief. It agrees with PKMG that the word inspection there does not mean routine inspection. And then you say you can now start to get... Isn't 5AA an add-on to five? And you want it to be an add-on to six as well? It's not, Your Honor. It's its own thing. It exists as its own thing. And what the board did was, it said, well, I'm looking at sub-Clin 5AA. It never says sub-Clin with 5AA. It's Clin 5AA, it's its own Clin, and the contract tells us that it covers routine inspections. Just getting back to your point about the misstep by the board, the government seems to persuasively, in my view, talk about the inspection referred to in six is not a routine inspection. That's not what it says. It says initial inspection, initial services that have to be done. So why isn't that at least an adequate explanation, even though it might dislodge one of the things the board said? Well, Your Honor, I think that we agree on that with regard to Clin 6. The point is that the board looked at the contract and said, here's the only possible explanation of this language. The only possible explanation, the reason that I'm granting a motion to dismiss is the only possible reading is that Clin 6 does exactly what it says it does. And it turned the word inspection, and it said, well, then it must be that the inspections are under Clin 6. There was no other evidence anywhere in the contract that the board pointed to, to tell you that routine inspections fall under Clin 6. The only evidence was the word inspection there. So if that doesn't mean that- But it's not the only evidence. We have the evidence of the document, which says not inspection, full stop, but inspection for initial services. So the board can opine about how it reads it, but we can read it too. And it says inspection, initial services. Yes, Your Honor, I hope that we're saying the same thing. Everybody, I think, except for the CBCA, agrees that the word inspection there does not mean routine inspections. My point is that the board used that as evidence that routine inspections fall under Clin 6, which we don't believe they do. And so, Your Honor, and again, that kind of goes back to the point that we make in our brief that, you know, assuming the board does not, or excuse me, that the panel does not in the way that we've presented, it becomes an issue of ambiguity, like the chemical case that we've presented. The board has said there's only one possible way to read this contract, and that includes the word inspection, meaning routine inspections. If that isn't the case, then there's more than one reasonable interpretation, and this should be remanded back to the board for a trial. And, Your Honor, that's not the only, I'll continue to point out as we do in our brief, that that's not the only problem with the board's interpretation. If you were to look at the board's interpretation, it limited it to the three CLINs, 5, 5AA, and 6. It does not examine CLIN 7. CLIN 7 is the third property type that's at issue in this contract in terms of routine inspections. Everyone agrees you have to perform routine inspections on CLIN 7. And what the board did was it said, again, if you look at CLIN 6, its title tells you exactly what services you have to perform under it. Well, you look at CLIN 7, CLIN 7 is exactly the same as CLIN 5. And the court said that, well, under CLIN 5, you only have that ongoing property management fee. Well, if that's the case, then where do the routine inspections for CLIN 7 go? The board's reading reads those out of CLIN 7, and the only logical place for them to go is to CLIN 5AA, which, again, the contract tells us covers all routine inspections. So I've pointed out the problematic parts of the board's decision, and specifically the fact that you have to read a singular word as plural. The CLIN versus sub-CLIN, they read that into the contract. It's problematic. And again, I would, again, look back to CHEMCO. If the panel finds that the board's interpretation was reasonable, well, then we've already established that the board agrees with the government that the word inspection doesn't mean that in CLIN 6. So we're now dealing with multiple reasonable interpretations of a contract. It becomes a question of ambiguity, and it should go back down to the board to resolve those ambiguities through a trial. And the last point I'll make, Your Honors, just talking about the Q&A, we believe it was also error for the board to not consider that Q&A. It's something that the government has continued to argue here, which is that the Q&A somehow was not incorporated into the contract. And that's an issue we'd like you to instruct, if you were to remand to the board, for them to consider the Q&A as part of the contract. It was entered into the contract through an amendment to the solicitation, and the SF-33 form at the cover of the contract incorporates the solicitation. So Your Honors, we believe that the board absolutely should- Well, let me ask you about that, because in your brief, as I recall, what you cite for support is A.1.1.5, but I don't see that that says anything about disincorporation. So what else can you cite us in the record to support your view? Your Honor, we would be looking at Amendment 2, which is on page 32 of the appendix, which is where the Q&A is incorporated through the amendment. And then if you look at the fully- Give me a second to look to find. You're pointing us to A.32? Well, that's where the amendment is, Your Honor. And then if you were to look at Appendix 1.1.5, which is where we've led you, that's the SF-33 form. It's the first page of the contract. And in the- there's a table, and it tells you- and there are boxes stacked on the left-hand side of the table that tell you what is incorporated, and the very first of those is the solicitation. Anything further? Would you like to- you want to reserve your rebuttal, or- I'd like to reserve my rebuttal time. Thank you, Your Honor. Okay. Thank you. Let's hear from the other side. Mr. Long? Thank you, Your Honor, and may it please the Court. BKMG simply can't overcome the plain shortcoming of its position, which I think the Court hit on in the course of my friend's presentation. The issue is that BKMG is seeking payment for properties that HUD does not own, the custodial properties, under a line item titled HUD-owned. I think Your Honor asked about whether HUD-owned properties includes custodial properties. If you look to Appendix 137, the definition of custodial properties states that a custodial property is a borrower-owned property. It is not owned by HUD. And so, returning back to Appendix 116, the CLIN schedule- I'm sorry, 119, the CLIN schedule, it is obvious that CLIN 5AA only captures HUD-owned properties. Custodial properties fall within CLIN 6, including routine inspections of them. And that basic point is consistent with the remainder of the contract. Custodial properties are described differently in the contract's explanation of acquisition types, that's in Appendix 143 to 144, and that explanation of acquisition types points out that custodial properties have limited property management tasks, and we can look to the description of duties with respect to custodial properties to see that that is indeed true. The general section on property maintenance with respect to HUD-owned properties, this is Section C.5.2.3 of the contract, is applicable only to HUD-owned properties, and custodial properties are described in a different section, that's C.5.2.10, at Appendix 171 to 172. The routine inspection requirement that is at issue here is set out separately for HUD-owned properties, it's at Appendix 163 to 164 for HUD-owned properties, and for custodial properties it is at Appendix 171. So, with those differences in contractual treatment established, when we return to the CLIN sheet, the only conclusion that the court can draw is that the parties have included routine inspections for custodial properties within CLIN 6, and that the CLIN 5AA applies only to routine inspections of HUD-owned vacant properties. Just to touch on two of PKMG's arguments, their discussion of vacant land, vacant land is treated somewhat differently from custodial properties in the sense that- Yes, Your Honor, yes, vacant lots are addressed somewhat differently. The definition of HUD-owned properties at Appendix 139 states that unless otherwise indicated, the term HUD-owned properties includes vacant land. And so, vacant land fall within HUD-owned properties, and PKMG's obligations with respect to vacant land generally falls within HUD-owned properties, so that in the Section C of the routine inspections of vacant lots, because there is an obligation to do routine inspections of all HUD-owned properties. Now, the CLIN sheet does treat vacant lots differently by separating out in CLIN 7 ongoing property management with respect to vacant lots. But generally speaking, the routine inspection requirement for vacant lots is associated with the requirement of routine inspections for HUD-owned properties. So, there's no inconsistency there, is the upshot at that point. With respect to the Q&A, I'll just point out, and I think this is fairly clear in the appendix, that Appendix 32 is an amendment to the solicitation, and it does incorporate this Q&A into the solicitation. But when we look at Appendix 115, which I think Chief Judge Proust pointed to, Appendix 115 is the SF-33 for the contract itself. And there's really no way to read that page as incorporating the solicitation, much less the specific Q&A on which PCAMG attempts to rely. Now, the court need not reach that Q&A in any event. This contract is unambiguous. The court can resolve on the face of the contract that the only reasonable interpretation here is that CLIN 5AA only applies to routine inspections. But, in any event, if the court were to go outside of the contract, or if the board had improperly gone outside of the contract, that the Q&A is not part of it. I'm sorry. I apologize. The Q&A is not part of the contract, was my point there. And with that, unless the court has any other questions. Hearing none, thank you. We'll turn to the other side for his remainder rebuttal. Thank you. Thank you, Your Honor. And I listened very closely during Mr. Long's presentation. And while I obviously understand the position he's taking, I hope that the panel listened very clearly. What Mr. Long is relying on is inferences and negative assumptions based on certain language. He was never able to look and say that the contract tells you that CLIN 6 are treated differently. The CLIN doesn't say routine inspection. And the argument that he's making is, well, the contract differentiates between HUD-owned and custodial for the purpose of routine inspection still doesn't address the vacant lot problem. What counsel just told you is that, oh, well, vacant lots are HUD properties, but we're still not going to group them under 5AA because the contract treats them differently. But he never tells you where it says that. The fact of the matter is the contract does not say that. The contract on appendix page 125 tells you that the ongoing PM services are grouped under CLINs 5, 6, and 7, and routine inspections are grouped under 5AA. And that's where we get back to the ambiguity. There's no question that the contract treats HUD-owned vacant properties and custodial properties different. There's also nowhere in the contract that it tells you that we're going to pay for routine inspections for those properties differently. So what the contract tells you is we are going to pay for ongoing PM services under 5, 6, and 7 on a monthly basis. And we are going to pay for routine inspections by, you know, that must be performed biweekly under CLIN 5AA. And to get where the government wants you to go on this, you have to make a lot of assumptions. You have, for one, you have to assume that the word routine inspections appears in the CLIN 7, and particularly with respect to CLIN 7, you have to say without it saying anywhere in the contract that even though it's HUD-owned, it gets treated differently from routine inspections for HUD-owned vacant and custodial. That's its own thing. It's a HUD-owned, and you have to do the routine inspections, but we're not going to pay you the same way we pay you for the other HUD-owned properties. The contract doesn't say that. At a minimum, it's ambiguous, and we ask that the board remand to the CBCA for further proceedings. Thank you. Thank both sides, and the case is submitted.